UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **James L. Miller** *(aka James L. Miller, Sr., formerly # 94316-071)*, | ) C/A No. 3:05-700-CMC-JRM <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) Report and Recommendation <br> ) |
| **Maria Barsana;** <br> **Kenny Boone,** also known as <br> Sheriff Florence County**;** <br> **Doctor Lance,** Medical Doctor at Lexington Detention Center**;** <br> **Susan McDougal;** and <br> **Jennifer Snell,** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

_____

## Introduction

This is a civil rights action filed by *pro se* by a person who was incarcerated at a local detention when the case was filed.[1]  Plaintiff originally filed this case in March 2005, when he was incarcerated at the Florence County Detention Center, awaiting the results of a federal supervised release violation proceeding in this Court.  *See* United States v. Miller, Criminal Action No. 3: 98-cr-1114-JFA-1.  In April 2005, Plaintiff was transferred from being held at the Florence County Detention Center to

_____

[1] Pursuant to 28 U.S.C. §636(b)(1), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in such *pro se* cases and to submit findings and recommendations to the District Court.  *See also* 28 U.S.C. § § 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).  Plaintiff has now been released from custody and has filed an Amended Complaint (Document 16).  The Amended Complaint is the operative complaint for purposes of this Report and Recommendation.

federal custody at the Lexington County Detention Center.[2]   Plaintiff provided an updated mailing address to the Court on April 21, 2005.  Since that time, three separate Orders (Documents 7, 12 and 14) have been issued by this Court in attempts to provide Plaintiff with directions to and time for bringing the case into proper form.  He still has not fully complied with any Order in that he has never paid the full filing fee, has not submitted a requested Statement of Assets and/or Financial Certificate, and has provided no summonses or Forms USM-285 for any Defendant.

Rather than comply with the directions of the initial Order (Document 7), which directed Plaintiff to either pay the filing fee or submit required financial documents (statement of assets/financial certificate) in order to request payment of the fee in installments and to submit summonses and Forms USM-285 for each Defendant, Plaintiff filed none of the requested documents, but filed, instead, an incomplete "Motion to Amend" his Complaint. (Document 9).  Plaintiff did not submit a proposed amended complaint along with his Motion, thus the undersigned was required to enter another Order (Document 12) addressing the proposed amended complaint and reiterating the directions to submit proper-form documents contained in the previous Order.  As the deadline for compliance with Document 12 neared, the Court

---

[2] Although Plaintiff lists certain dates within the body of his Amended Complaint on which alleged medical problems arose for him at the Lexington County Detention Center as being in 2004, *see* Amended Complaint at 2, paras. 12 and 13 ("April 20, 2004" & "April 23, 2004", it is clear from review of the docket of his criminal case and from other allegations in the Amended Complaint, see Amended Complaint, at 3, para 20 ("April 25, 2005"), that all the matters of which Plaintiff complains occurred between March 2005 and July 2005.

2

received a cryptic letter from Plaintiff about a "package" he allegedly sent to the Court, but which the Court never received. (Document 13).  When nothing was received from Plaintiff by the passing of the deadline for compliance with Document 12 had passed, out of an abundance of caution due to the cryptic letter, another "FINAL" proper form Order was issued by the undersigned on July 27, 2005. (Document 14).  That Order again reiterated the previous directions about submission of an amended complaint and about the other proper form documents requested in the first two Orders, but never received, and specifically informed Plaintiff that this would be his "FINAL" opportunity to bring the case into proper form. The Order stated in pertinent part:

> **Accordingly, in the interests of justice, Plaintiff should be given one FINAL opportunity to bring the case into proper  form.** Under the General Order signed on June 4, 1997, the undersigned is giving the Plaintiff **a FINAL** *twenty (20) days* from the date this Order is entered (plus three days for mail time pursuant to FRCP 6(e)) to:
>
>> (1) Submit his Amended Complaint to the Office of the Clerk of Court.  Plaintiff has already been provided with a blank court-approved complaint form to use for his compliance.
>>
>> (2)Comply with the Court's previous Orders (Documents 7 and 12) regarding the submission of summonses and Forms USM-285 based on the names and number of Defendants he intends to sue under the Amended Complaint. Plaintiff was previously provided three additional summons forms and Forms USM-285 to use for his compliance.
>
> **Plaintiff is hereby placed on notice that this will be has final opportunity to bring this case into proper form**.

(Document 14)(emphasis in original).

Plaintiff never submitted any other change of address notification to this Court after to one he submitted in April 2005, and so Document 14 was mailed to him at Lexington County Detention Center. However, when the postal mail containing Plaintiff's copy of Document 14 was returned undelivered on August 8, 2005 (Document 15), the Clerk of Court found another mailing address for Plaintiff in his criminal case. Plaintiff's copy of Document 14, along with applicable attachments was mailed to that address on August 29, 2005. In accordance with the provisions of Document 14, Plaintiff was required to submit an amended complaint and all required service documents (summonses and Forms USM-285) under that Order by September 21, 2005.[3] Clearly, Plaintiff received that Order because he submitted the Amended Complaint (Document 16) on September 13, 2005, approximately one week before the expiration of the full compliance deadline. However, no summonses, Forms USM-285, statement of assets/financial certificate, nor any other correspondence from Plaintiff have been received by the Court as of the time of preparation of this Report and Recommendation, over one month past the "final" compliance deadline. Both because of Plaintiff's non-compliance with the Court's Order and because of the insufficiency of the allegations contained in the Amended

---

[3] Plaintiff never paid the filing fee nor did he submit the Statement of Assets/Financial Certificate ordered under the initial proper form Order (Document 7). Though not specifically referenced in the two follow-up Orders, the order for their submission is still outstanding as well, and Plaintiff's failure to ever submit the financial documents during his incarceration also shows his continuing lack of compliance in this case.

Complaint, this case should be summarily dismissed without the issuance of process for Defendants.

## Pro Se Review

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's *pro se* Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. § § 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951 (4th Cir. 1995)(*en banc*); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); and Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *see* Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See* Hughes v. Rowe, 449 U.S. 5, 9-10 & n.7 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *See* Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). Nevertheless, the requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *See* Weller v. Department of Social Servs., 901

F.2d 387(4th Cir. 1990).     Even under this less stringent standard, however, the Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

## Discussion

Initially, this case should be summarily dismissed because, as shown above, Plaintiff has been given numerous opportunities to pursue this case in a timely fashion and to comply with the Court's directions for bringing this case into proper form, but has failed to do so for nearly eight months.  In fact, this Court has gone beyond its own obligations in this case by *sua sponte* seeking out a new address for Plaintiff when he failed to comply with the previous orders to keep his address updated. However, rather than timely comply, Plaintiff has continued to fail to submit the required and requested documents.   The Court has spent excessive judicial resources in an attempt to assist Plaintiff in this case.  His failure to timely comply at this late date, despite warnings that this would be his "final opportunity" to do so, clearly supports a recommendation that the case be dismissed without prejudice at this time.  *See* Fed.R.Civ.P. 41(b)(district courts may dismiss an action if a plaintiff fails to comply with "any order of the court." ); *see also* Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989)(dismissal with prejudice appropriate where warning given); Chandler Leasing Corp. v. Lopez, 669 F.2d 919, 920 (4th Cir. 1982)(court may dismiss *sua sponte*).

Furthermore, even if Plaintiff had timely complied with the previous Orders,

this case would still be subject to summary dismissal the allegations contained in the operative Amended Complaint (Document 16) are not sufficient to state a viable claim for damages under 42 U.S.C. § 1983[4] against any of the named Defendants. Plaintiff's claims are that, despite alleged awareness of his pre-existing medical problems by some unnamed detention center personnel, he was not provided with any blood pressure medication or doctor visits while he was incarcerated at the Florence County Detention Center, and that he was not provided appropriate and sufficient treatment while he was at the Lexington County Detention Center. He alleges that he was admitted to the hospital with "heart failure" shortly after he was released from custody, and he contends that the alleged inadequate care he received while detained at least contributed to the need for the hospitalization.

With regard to his incarceration in Florence County, according to Plaintiff, he never received any blood pressure medication for the "five months" that he was allegedly housed at the Florence County Detention Center. He states that he asked to see a doctor, but was denied that request by unnamed "medical Staff at FCDC." Despite his claims that he was "denied his chronic care Medication" while at "FCDC," he does not name any individual staff member or official who allegedly made the decisions to deny him his medication. Although he names as Defendants in the

---

[4] Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. *See* Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of section 1983 is to deter state actors from using badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. *See* McKnight v. Rees, 88 F.3d 417(6th Cir. 1996)(emphasis added).

caption of his Amended Complaint certain individuals who may or may not be Florence County Detention Center employees or officers, the only Defendants who are specifically referred to in the allegations in the body of the Amended Complaint are "Dr. Lance" and "Nurse Jennifer [Snell]." From the context of the remainder of the allegations, it appears that both of these Defendants were only involved with Plaintiff while he was housed in Lexington County. There is no reference to Defendants McDougal, Barsana, or Boone anywhere in the Amended Complaint, except for the listing of their names on the caption of the Amended Complaint, and while they might be Florence County employees,[5] merely listing them in a caption without providing specific allegations of wrongdoing against them, even in liberally construed *pro se* pleadings, is not sufficient to allow this case to go forward against these persons. Under the provisions of the Prison Litigation Reform Act, more specifically 28 U.S.C. § 1915(e)(2)(B), this Court should dismiss an action filed by a prisoner which is "frivolous" or "fails to state a claim on which relief may be granted." Since there are no allegations of any wrongdoing on the part of the Defendants McDougal, Barsana, or Boone, Plaintiff's Complaint is both frivolous and fails to state a claim on which relief can be granted as to this "Defendant." *See* Cochran v. Morris, 73 F.2d 1310 (4th Cir. 1996)(statute allowing dismissal of *in forma pauperis* claims encompasses complaints that are either legally or factually

---

[5] Plaintiff does not provide addresses for any Defendant, nor, as indicated previously, has had provided service documents for them either. As a result, the Court has no way to know which, if any, of these Defendants allegedly denied Plaintiff medication or doctors in Florence.

8

baseless); Weller v. Dep't of Social Servs., 901 F.2d 387, 389 (4th Cir. 1990)(dismissal proper where there were no allegations against defendants).

Although it is possible that Plaintiff named Defendant Boone because he is the Sheriff of Florence County and may or may not have some sort of supervisory position relative to the "medical staff" at the detention center, in absence of specific allegations showing any personal involvement whatsoever of Defendant Boone in the events giving rise to this claim, no viable § 1983 claim is stated against Boone. In order to assert a viable § 1983 claim against any particular public official, a "causal connection" or "affirmative link" must exist between the conduct of which the plaintiff complains and the official sued. *See* Kentucky v. Graham, 473 U.S. 159 (1985); Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983). The doctrine of vicarious liability and the doctrine of "*respondeat superior*" are not applicable in § 1983 actions. *See* Vinnedge v. Gibbs, 550 F.2d 926, 927-29 & nn. 1-2 (4th Cir. 1977); *see also* Wilson v. Cooper, 922 F. Supp. 1286, 1293 (N.D. Ill. 1996); Campo v. Keane, 913 F. Supp. 814, 825 & n. 11 (S.D. N.Y. 1996). Plaintiff could, however, may bring an individual action against particular employees or officials of the Florence County Detention Center who have allegedly violated his rights as long as he submits allegations showing personal involvement of the particular employee or official in Plaintiff's injuries. *See also* Horton v. Marovich, 925 F. Supp. 540 (N.D.Ill. 1996)("Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official

personally caused or played a role in causing the deprivation of a federal right."). While Sheriff Boone may be held liable for the conduct of others if the actions alleged to have occurred were the result of an official policy or custom for which he was responsible, *see* Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)), there are no allegations in the Amended Complaint that Plaintiff was denied necessary medical care in Florence as a result of one of Sheriff Boone's policies.

Finally, Plaintiff fails to state a viable § 1983 claim against either Defendant Snell or Lance because his allegations about the medical care he received from them while he was housed at the Lexington County Detention Center do not show medical indifference. At most, Plaintiff's allegations show possible medical negligence/malpractice, but such claims are not properly raised in this Court in absence of diversity of citizenship of the parties, which is clearly not present in this case. It is well settled that correctional systems are required to provide at least a minimal level of medical care to inmates, and detention facilities are required to provide medical treatment to detainees. *See* Helling v. McKinney, 509 U.S. 25 (1993). The Helling Court stat ed,

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being. .

> . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment[.]

509 U.S. at 32 (quoting DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200 (1989); *see also* Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).

With respect to medical care, a prisoner (or former prisoner like Plaintiff) seeking compensation in a § 1983 case[6] for problems that occurred during incarceration "must allege acts or omissions sufficiently harmful to evidence *deliberate indifference to serious medical needs*." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (emphasis added). The Supreme Court in Estelle v. Gamble pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Estelle v. Gamble, 429 U.S. at 105. "Although the Constitution does require that prisoners be provided with a certain *minimum level of medical treatment*, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988)(emphasis added). *Cf.* Whitley v. Albers, 475 U.S. 312, 320 (1986)(a state's responsibility to attend to the medical

---

[6]Plaintiff's Complaint is before this Court pursuant to 42 U.S.C. § 1983. Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. *See* Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of section 1983 is to deter state actors from using badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. *See* McKnight v. Rees, 88 F.3d 417(6th Cir. 1996)(emphasis added).

needs of prisoners does not ordinarily clash with other equally important governmental responsibilities). Although the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. *See* Brown v. Thompson, 868 F. Supp. 326 (S.D. Ga.. 1994)(collecting cases).

Under Estelle v. Gamble, 429 U.S. at 105, the failure of the Defendants to bring Plaintiff's blood pressure under control, to give him the medications of his choosing, or to take Plaintiff to outside hospitals or physicians as quickly as Plaintiff might have desired and any negligence or possible malpractice that might have occurred while attempting to treat Plaintiff's medical problem within the detention center do not rise to the level of compensable constitutional violations. In Lamb v. Maschner, 633 F. Supp. 351 (D. Kan. 1986), the district court ruled that the proper inquiry for indifference is whether the prison or jail provided *any* treatment, and that the plaintiff's agreement or disagreement with the treatment is irrelevant:

> Even though plaintiff and defendants have a differing opinion as to the proper treatment to be received by plaintiff, this does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). Therefore, the key question in this case is whether the defendants have provided plaintiff with some kind of treatment, regardless of whether it is what plaintiff desires.

Lamb v. Maschner, 633 F. Supp. at 353; *see* Walker v. Peters, 863 F. Supp. 671 (N.D. Ill.1994)(under Farmer v. Brennan, "mere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the

part of the former, although if the patient is right he or she might have a common law (not a constitutional) claim for medical malpractice").

In this case, it is clear from Plaintiff's allegations that the Lexington County Detention Center's medical staff provided Plaintiff with considerable medical care for his blood pressure problems, both inside the prison and with outside professionals. Plaintiff was monitored, was given medications, and was taken to an outside hospital when he experienced serious problems that possibly arose from a single act of negligence when he was given incorrect medication. The fact that Dr. Lance did not agree to a heart monitor or to the exact medication prescribed by the doctor at the outside hospital does not show medical indifference. Plaintiff acknowledges that he was given some medication and that monitoring of his blood pressure continued until he was released from custody. Under these circumstances, medical indifference is not shown and no constitutional violation has been shown.

Essentially, the allegations in the Complaint show only a disagreement as to the proper type and amount of medical treatment provided and a possible claim of medical malpractice by an one or more members of Lexington County Detention Center's medical staff. It is well settled that negligent or incorrect medical treatment (medical malpractice) is not actionable under 42 U.S.C. § 1983. *See* Estelle v. Gamble, 429 U.S. at 106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. *See* Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th

Cir. 1987); Pink v. Lester, 52 F.3d 73 (4th Cir. 1995) (applying Daniels v. Williams and Ruefly v. Landon: "The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct[.]").  Also, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  *See, e.g.*, DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-03 (1989);  Brooks v. Celeste, 39 F.3d 125 (6th Cir.1994)(Although several courts prior to the Supreme Court's decision in Farmer v. Brennan held that "repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise."); Sellers v. Henman, 41 F. 1100 (7th Cir. 1994)("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990).

As to medical malpractice or negligent medical treatment by an official or employee of a South Carolina county,  Plaintiff can seek relief in state court under the South Carolina Tort Claims Act, S.C. Code Ann., § 15-78-10 *et seq.*, because the county is a "political subdivision" of the State of South Carolina.  *See* S.C. Code Ann.*,* § 15-78-30(a); Browning v. Hartvigsen,414 S.E.2d 115, 116-18, 116 n.1, 117 n.2  (S.C. 1992).  Malpractice actions against non-governmental medical personnel can be pursued under the state's general tort law.  *See* Willis v. Wu, 607 S.E.2d 63 (S.C. 2004).   Claims of negligence and medical malpractice are actionable under South Carolina law, and they should be brought *only* in state court *unless* diversity

of citizenship is present.  If there is diversity of citizenship and over $75,000 in controversy in a medical malpractice case, it can be heard in this Court pursuant to its diversity jurisdiction.  However, as stated above, it is clear from Plaintiff's Amended Complaint that there is no diversity jurisdiction available in this case.

### **Recommendation**

Accordingly, it is recommended that the District Court dismiss the Complaint in this case *without prejudice* and without issuance and service of process.  *See* Denton v. Hernandez; Neitzke v. Williams; Haines v. Kerner; Brown v. Briscoe, 998 F.2d 201, 202-04 & n. * (4th Cir. 1993); Boyce v. Alizaduh; Todd v. Baskerville, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).  Plaintiff's attention is directed to the important notice on the next page.

            Respectfully submitted,

            s/Joseph R. McCrorey
            United States Magistrate Judge

November 9, 2005
Columbia, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" &The *Serious Consequences* of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of service. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-71 (1976); Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); Oliverson v. West Valley City, 875 F. Supp. 1465, 1467 (D. Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *See* Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991); *see also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard,, the court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"; which involved a *pro se* litigant); Goney v. Clark, 749 F.2d 5, 7 n. 1 (3d Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201